NEWBY et al. v. W. T. RAWLEIGH CO.
(No. 699.)

(Court of Civil Appeals of Texas. El Paso. April 19, 1917. Rehearing Denied May 17, 1917.)

1. MONOPOLIES �={17(1) — RESTRAINT OF TRADE—SALE OF GOODS.

A sales agreement that the buyer should sell the goods only within a certain territory and engage in no other business violates Rev. St. 1911, arts. 7796–7798, prohibiting combinations to maintain prices and prevent competition in a certain territory.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 13.]

2. MONOPOLIES �={21—CONTRACTS—LEGALITY OF OBJECT—RESTRAINT OF TRADE.

Where a seller, after the sales contract was signed but before shipping the goods, required the buyer to agree not to sell outside a certain territory, and to devote all his time to the business, such agreement rendered the sale void under Rev. St. 1911, §§ 7796–7798, prohibiting combinations preventing competition, etc., and precludes recovery of the purchase price.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 15.]

Appeal from Erath County Court; A. P. Young, Judge.

Action by the W. T. Rawleigh Company against W. H. Newby and others. Judgment for plaintiff, and defendants appeal. Reversed and rendered.

Smith & Palmer, of Comanche, for appellants. J. A. Johnson and J. B. Keith, both of Stephenville, for appellee.

### Opinion.

HARPER, C. J. This suit was instituted by "the W. T. Rawleigh Company, a private corporation, against W. H. Newby, principal debtor, and J. F. Newby, L. H. Capell, and M. D. Williford, as sureties, to recover a balance due of $534.88 for certain medicines, extracts," etc., furnished by plaintiff to W. H. Newby and the other defendants in writing guaranteed payment. For defense, it is alleged that: (1) The plaintiff corporation was not authorized to do business in Texas; (2) the contract between the parties is illegal and unenforceable, because violative of the anti-trust laws of Texas. Tried by court without jury, and judgment rendered for plaintiff for the amount sued for with legal interest.

By their five assignments, appellants urge:

(1) The appellee is a foreign corporation without a permit to do business in Texas, therefore cannot maintain the suit.

(2) The undisputed facts being that, as a part of the contract sued on, W. H. Newby was to devote his entire time to selling plaintiff's products and would have no other occupation, such contract is in violation of the anti-trust laws of Texas.

(3) The facts showing that the goods in question were not sold and delivered under the written contract set up in original petition under and by virtue of a subsequent agreement between appellee and W. H. Newby, which provided that the goods should be sold within a certain defined territory and no other, it was in restraint of trade and void under the statute of Texas.

(4) Because the court erred in rendering judgment against the defendants L. H. Capell, J. S. Newby, and M. D. Williford, in that these defendants were only sureties or guarantors for the principal, W. H. Newby, and the plaintiff and said Newby entered other contracts and agreements other than that shown by the written guaranty executed by these defendants, by which other agreements it was contracted between plaintiff and W. H. Newby that said Newby would sell said products of plaintiff company only, and would have no other business or vocation and would sell said products within certain defined and limited territory, within Milam county, Tex., which agreement was without the knowledge or permission of these guarantors, and because thereof these guarantors

---

⟱For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

were discharged from liability on the alleged contract sued on.

### Findings of Fact.

The writing in evidence is simply a contract between the foreign corporation and the defendant Newby, with no illegal provisions in it. Following the execution and delivery of this contract and the suretyship contract of even date therewith, and before any goods were shipped, a printed slip, entitled "Territory Selection," was sent to defendant, signed by him; thereupon the first order for goods was sent in. The shipment was held up until the question of the territory was settled.

It is agreed that, after the question of territory was settled, defendant received through the mail a booklet entitled "Guide Book for Rawleigh Men," which contained the following:

"All Rawleigh men have definitely described territories within which each must confine his sales. It is well settled from 8 to 10 townships is large enough to keep the most industrious man busy thoroughly working it three or four times a year. But if more sparsely settled, 10 or 12 townships, and, in extreme cases, even a little larger territory is necessary to give steady employment the year round. * * * When we accepted your contract, it was with the distinct understanding that you would devote all of your time and attention to selling Rawleigh products. Our rules do not permit any Rawleigh man to divide his time, devoting part of it regularly to any other occupation, such as farming, home work, soliciting or anything else which will interfere with the sale of our products. Our reason for this is that our experience teaches that no man can divide his time between this business and some other occupation and make a success of it. No man can successfully serve two masters. No Rawleigh man can thoroughly work his territory, call on all the farmers in it every three or four months and present the large Rawleigh line well and give customers the service and attention their needs require, unless he puts in practically all of his time traveling. And to keep out competition and secure the best results, this is absolutely necessary. So a Rawleigh man must have no other occupation."

Also, a letter containing the following:

"We have a report from our solicitor Mr. J. H. Shore, the substance of which is that you want $1,000.00 damages for an alleged error which you claim was made in your selection of territory. He also reports that instead of being out on the road selling products, as you are expected to be, you are doing other work. He also reports that you not only refuse to accept any other territory, but to go ahead with your work in the territory you have been operating in. In other words, it seems that you have not only become contrary with relation to this matter, but you are setting up a claim for damages which you have never had, which, of course, is ridiculous on the face of it. As a matter of fact you have no grounds on which to claim damages because the voucher for your territory selection which you signed August 2, 1913, and which we have on file here reads as follows: 'Territory: State—Texas: County—Milam, south of Little River and west of S. A. & A. P. Ry.'

"Now, instead of confining your sales to your own selection of territory as above indicated, it appears that you have made sales in that part of Milam county east of the S. A. & A. P. Ry. and south of Little River. That is, we suppose this is so, we do not know; but we do know that the last described territory was selected by Mr.

W. H. Newby on September 19, 1913, and when he started to work in it he wrote that you were making sales in it. We then requested you to confine your sales to your own selection of territory, and informed Mr. Newby that he should continue to operate in the territory he had selected. * * *

"Under these circumstances, there are just three things that we will do for you: (1) Let you retain your original selection of territory; (2) you may choose that part of Milam county south of the G., C. & S. F. Ry. Co. and north of the J. & C. L. Ry. and the line running through Isaacs, Milam, Tracy and San Gabriel; or (3) terminate your contract and require you or your guarantors to pay the balance due us on your account. We inclose territory selection blanks on both the above territories; take your choice; sign the one you want and return it promptly. If we do not hear from you inside of ten days from this date it will be necessary for us to terminate your contract and require settlement of the balance due us on your contract. We do not like to do this, especially as it seems you have the ability to make some money selling our products, but if you do not value your business and seem disposed to take advantage of us we might just as well part company now with you as later."

Defendant testified that he read the booklet, and that, in handling and selling the goods shipped to him, followed the instructions contained in them, confined himself to the territory designated, and that he had no other business or occupation, except when it was so rainy that he could not travel. "I pursued these instructions, because I thought I had to." It is further undisputed that the guarantors had no knowledge of these subsequent requirements by booklet and letters.

[1] If the booklets and letters are to be construed to be a part of the original writing, or if they constitute the contract of sale between the parties, the transaction is violative of title 130, c. 1, arts. 7796–7798, R. S. 1911; for they clearly show an intention to combine the capital, skill, and acts of the parties to fix and maintain a standard of prices upon certain commodities and to prevent competition in a given territory.

These booklets and letters contain the exact matters which were incorporated in the contract quoted in full in the case of Armstrong v. Rawleigh Medical Company, 178 S. W. 582, held to be void because it contravened the statutes above cited. See, also, Watkins Medical Co. v. Johnson, 162 S. W. 394.

[2] Appellee insists that, the original contract being legal, the subsequent agreements, though illegal, in no sense vitiate the transaction. True, the original writings are free from vice, but the question here is: Do they constitute the whole agreement between these parties? Without going into any lengthy discussion, it seems clear to us that the medical company did not so consider it; for, before any goods were shipped, they required Newby to designate his territory, sent him the booklets, and after some sales had been made in writing called his attention to the contract in the following language: "All Rawleigh men have definite territory." It will be noted that the booklet contains the following:

"When we accepted your contract, it was with the distinct understanding that you would devote all of your time and attention to selling Rawleigh products," etc.

And the appellant testified that he observed the said provisions because he thought he had to. Thus they declare that the writings were not all of the contract.

However, it seems clear that the subsequent correspondence and understandings between the parties form just as definite and distinct a contract as the original writings. And this is clearly the basis of the sales to Newby, for no sales or shipments were made until the things above enumerated were done and agreed to by appellant.

The statute upon which this defense is based reads, in part:

"A trust is a combination of capital, skill or acts by two or more persons, firms, corporations or associations of persons * * * for * * * the following purposes: (1) To create, or which may tend to create or carry out restrictions in trade or commerce or aids to commerce * * * or to create or carry out restrictions in the free pursuit of any business authorized or permitted by the laws of this state." Contracts and agreements violative of this act are void.

That the acts of these parties constituted a combination to restrain the free pursuit of the business of selling products after they had become the property of Newby there there can be no question, and, being such, are violative of the statute quoted; are therefore void.

It is therefore the order of this court that the judgment of the trial court be reversed, and judgment is here rendered for appellants.