WHISENANT et al. v. SHORES—MUELLER CO. (No. 710.)

(Court of Civil Appeals of Texas. El Paso. May 10, 1917. Rehearing Denied May 24, 1917.)

1. COMMERCE ☞40(1)—RESTRAINT OF TRADE —MONOPOLIES—SALE OF GOODS.

A sales agreement that the buyer should sell the goods only within a certain territory and engage in no other business violates the Anti-Trust Law (Acts 28th Leg. c. 94), although the sale and delivery of the goods involved transportation in interstate commerce.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 29, 30.]

2. MONOPOLIES ☞21—CONTRACTS—LEGALITY OF OBJECT—RESTRAINT OF TRADE.

Where a buyer, after a sales contract was signed, but before the goods were shipped, impliedly agreed not to sell outside a certain territory and to devote all his time to the business, such agreement rendered the sale void under Anti-Trust Law, and precludes recovery of the purchase price.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 15.]

Appeal from Comanche County Court; J. H. McMillan, Judge.

Action by the Shores-Mueller Company against J. H. Whisenant and others. Judgment for plaintiff, and defendants appeal. Reversed and rendered.

H. N. Goodson, of Comanche, for appellants. Smith & Palmer, of Comanche, for appellee.

### Statement of Case.

HIGGINS, J. This suit was instituted by appellee against J. H. Whisenant as principal debtor, and T. J. Hanson and A. N. Steele as guarantors, to recover a balance of $394.06 due on open account for goods sold and delivered to Whisenant. It was alleged that the goods were furnished Whisenant under a written contract which reads:

"Whereas, J. H. Whisenant of Comanche, Texas, hereinafter called the salesman, desires to engage in the business of selling the extracts, spices, toilet goods, household medicines, veterinary remedies, and other goods, manufactured or sold by Shores-Mueller Company, a corporation organized under the laws of Iowa, hereinafter called the company, to consumers, and desires to purchase the same from the company at wholesale prices and to pay therefor in installments:

"Therefore, unless prevented by strikes, fires, accidents or causes beyond its control, the company agrees to sell and deliver to the salesman f. o. b. cars at Cedar Rapids, Iowa, such reasonable quantities of the said extracts, spices, toilet goods, household medicines, veterinary remedies, and other goods as the salesman may order from time to time, and charge the same to his account at current wholesale prices; also to notify the salesman promptly of any change in wholesale prices.

"The salesman agrees to pay his said account to the company at its office at Cedar Rapids, Iowa, as charged at said wholesale prices, which prices shall be conclusive both as between the parties hereto, and as to the guarantors whose guarantee is a part of this agreement. The salesman agrees and shall have the right to pay his said account by remitting in cash each week to the company, an amount equal to one-half the receipts from his business until his account is balanced, and as evidence of good faith he shall make to the company weekly reports of his business; provided, however, if he pays his account in full on or before the 10th day of each month he is to be allowed a discount of 10 per cent. from said wholesale prices, and shall be relieved from making weekly reports so long, and so long only, as he continues to pay his account on or before the 10th of each month, as aforesaid.

"The company further agrees to furnish free of charge, on board cars at factory, a reasonable amount of its advertising matter, report and order blanks, and printed return envelopes, for the salesman to use in conducting his business, also to give him free of charge, instructions and advice, through letters, bulletins and booklets which the company may have on hand from time to time as to the best method of selling its products to consumers.

"If for any reason the salesman wishes to discontinue the work at any time the company agrees to take back all goods in possession of the salesman at the time and give him credit for same at the prices originally charged, less freight, provided said goods are returned to the company in the same condition as when first shipped, otherwise a charge of not over twenty per cent. will be made for putting such goods into merchantable condition, and the balance due the company shall be paid the company at Cedar Rapids, Iowa, in cash, within a reasonable time.

"This contract is subject to acceptance at the

---

home office of the company and is to continue in force so long as the account of the salesman is satisfactory to the company, provided, however, that the salesman and his guarantors may be released from all liability under this contract at any time by paying in cash the balance due the company.

"Dated at Cedar Rapids, Iowa, August 31, 1912.

　　　　"Shores-Mueller Company,
　　　　　"By G. A. Shores, President.
　　　　"J. H. Whisenant."

Hanson and Steele guaranteed the obligations of Whisenant under the contract. The amount sued for is the balance due by Whisenant for goods sold and delivered to him by appellee. The contract mentioned was accepted by appellee on November 30. 1912. Whisenant did not begin to sell goods under the same until after January 1, 1913. Prior to the time the contract was signed, Whisenant received several letters from appellee relative to same and a book entitled "Convincing Proof," also a pamphlet entitled "Read this booklet carefully. It explains how to get your contract signed so there will be no question but what it will be accepted." After the contract was signed by Whisenant and accepted by appellee, Whisenant received from appellee the wholesale and retail price lists of the products, and "Shores Special Instruction Book No. 2." The price list simply showed the wholesale and retail prices of the various articles.

On December 6, 1912, appellee wrote Whisenant as follows:

"Glad to receive your order for goods Mr. Whisenant. They have gone to you by freight, and we hope they will arrive promptly. We will look for your photo as soon as you have it taken.

"Your territory will be Comanche county, Texas. We think we wrote you about this when we accepted your contract."

Findings of fact and conclusions of law were filed by the court as follows:

(1) I find that the defendants executed the contract sued on.

(2) I find that the defendant J. H. Whisenant, in his settlements with plaintiff, fell behind in the amount sued for, and that, in accordance with the terms of the contract sued on, all the defendants are liable to plaintiff for said sum.

(3) I find that if there were any parol agreements or agreements by correspondence, between plaintiff and defendant J. H. Whisenant before the execution of the contract sued on, the same were merged into said contract, and that the contract sued on was not changed or superseded to any subsequent contract, either oral or written.

(4) That the printed instructions or rules sent out by plaintiff to defendant J. H. Whisenant, after the execution of the contract sued on, did not amount to either a new contract or subsequent conditions ingrafted on the contract sued on, but amounted merely to advice in the conduct of his business.

(5) I find and conclude that there is no condition in the contract sued on and whereby it might be forfeited by reason of the failure of the defendant J. H. Whisenant in following the printed rules or instructions of the plaintiff in regard to territory, prices, or the exclusive handling of plaintiff's products, and that said contract was and is not in violation of the antitrust laws of this state.

I therefore conclude that plaintiff ought to recover the amount sued for.

Additional findings of fact were filed by the court at request of defendant, from which we make the following condensed statement:

1. That Whisenant had not received or sold any goods under the written contract in Comanche county before he received the letter of December 6, 1912, assigning Comanche county his territory to him and before receipt of the instruction books and pamphlets above mentioned. That the contract was accepted by appellee on November 30, 1912.

2. That all goods ordered, received, and sold by Whisenant in Comanche county were ordered, received, and sold after the receipt of the letter of December 6th and after the receipt by Whisenant of the Shores Special Instruction Book No. 2.

3. After the receipt of said instruction book No. 2 and the letter of December 6th, Whisenant never sold or offered to sell any of the products in any territory other than Comanche county.

4. After the receipt of said instruction book No. 2, Whisenant, up to the time that the contract was terminated, never had or engaged in any other business except the sale of the products of plaintiff in Comanche county.

5. After the receipt of said instruction book No. 2, Whisenant devoted his time and attention exclusively to selling the products of appellee.

6. After the contract sued upon was signed and accepted by appellee, appellee furnished Whisenant retail price list above mentioned, at which prices therein listed Whisenant was to sell the products of the appellee to consumers.

7. At no time or place did Whisenant ever sell or offer to sell to consumers any of said products except at the retail price list so furnished to him by appellee.

8. That said instruction book No. 2 instructed Whisenant that "our rules and instructions must be complied with," and that "the products of the plaintiff should only be sold at the prices shown in retail price list," and that "we positively never allow any salesman to canvass outside the territory we have assigned to him."

9. After the contract sued on had been accepted, appellee by a letter dated December 6, 1912, notified Whisenant that "your territory will be in Comanche county, Tex."

10. Each and all of the above matters were expressly communicated to Whisenant by appellee before he received any goods from appellee or sold any of the goods and after the contract sued on had been executed.

11. After the matters were so communicated to Whisenant, he acquiesced in the same and complied with and observed each and all of them in the conduct of his business with appellee and with his customers in the state of Texas.

In addition to the facts found by the trial.

court, it appears, and we find, that the book entitled "Convincing Proof" informed Whisenant that he "was expected to live up to the reasonable rules of our company"; that they "must protect our salesman in the territory they are working"; that he "was to indicate your choice of territory when you send in your application and we will give you the county you pick if we can do so." The pamphlet entitled "Read this booklet carefully, etc.," informed him:

"The essential features of our agreement are embraced in only a few words.

"Briefly speaking, you want to buy our goods; you want to know what you will have to pay for them; you want a good territory to sell them in and you want time to pay for the goods.

"We want to sell our goods to you; we have good vacant territory where you can make sales, and we are willing to wait for our pay. We therefore make a written contract as follows:

"We agree to furnish you our products on credit at current wholesale prices, and to accept pay for them in installments; to furnish you free instruction in salesmanship; free advertising matter, report and order blanks. We also are to let you select your choice of territory, provided it is vacant to operate in.

"The above are the obligations we assume in the contract. Now let's see what your part is.

"You agree, on your part, to devote your time and attention exclusively to the business; to sell our products only; to make installment payments on your account until it is balanced, and to furnish weekly reports of your business. You are also expected to comply with all other reasonable rules of our company.

"The above embraces the obligations you assume."

By Instruction Book No. 2, he was informed:

"Never canvass outside of your own territory.

"We positively never allow any salesman to canvass outside of the territory we have assigned him. You would not care to have any Shores man in an adjoining county sell your customers, and he would not allow you to do so in his. According to our contract we must protect all our men and we must insist that you stay strictly in the territory assigned. If you hear of any Shores man selling goods in your territory, let us hear from you at once, giving his name and address, and if possible all the information you have at hand, and we will at once write the salesman and insist that he discontinue this practice. You must, however, not sell goods in another Shores salesman's territory, so there will be no reason for complaint."

## Opinion.

[1] Under the decisions of our courts, it is well settled that an agreement which would obligate Whisenant to sell no products except those of appellee, and which required him, after receiving the products in Texas, to sell the same at the prices fixed by appellee, would be in restraint of trade within the meaning of the Texas Anti-Trust Law (Acts 28th Leg. c. 94); Segal v. McCall Co. (Sup.) 184 S. W. 188; Armstrong v. Rawleigh Med. Co., 178 S. W. 582; Rawleigh Med. Co. v. Gunn, 186 S. W. 385; Rawleigh Med. Co. v. Fitzpatrick, 184 S. W. 549; Watkins Med. Co. v. Johnson, 162 S. W. 394; Rawleigh Med. Co. v. Mayberry, 193 S. W. 199. And the same authorities hold that the obnoxious features of the contract preclude a recovery of the purchase price, notwithstanding the interstate commerce nature of the transaction in so far as the sale and delivery of the goods was concerned. It would be profitless to discuss this feature of such a transaction as the authorities cited definitely settle the question.

[2] So it remains to be determined whether there was a contract between the parties containing the features indicated. No such provisions are embraced within the written contract which was executed by the parties dated August 31, 1912; but the literature sent by appellee to Whisenant before and after the consummation of such contract imposed the condition that Whisenant should devote his time and attention exclusively to selling the products of appellee. This necessarily would preclude him from selling any other products. And the further condition was imposed that the products should be sold at the retail price list furnished by appellee. These conditions were impliedly assented to by Whisenant, and thus created a contract to abide by and observe such conditions. Such contract related to matters collateral to the obligations assumed by the respective parties in the writing of August 31st. It did not in any wise alter, vary, or contradict the latter contract, but was entirely consistent therewith. It therefore follows that in order to ascertain the complete contract between the parties, under which the sale was afterwards made, we must look, not only to the writing of August 31st, but also to the conditions imposed in the printed literature sent by appellee to Whisenant and by the latter assented to and observed. Coverdill v. Seymour, 94 Tex. 1, 57 S. W. 37; Henry v. McCardell, 15 Tex. Civ. App. 497, 40 S. W. 172; Womack v. Wamble, 27 S. W. 154; Rubrecht v. Powers, 1 Tex. Civ. App. 282, 21 S. W. 318; Peel v. Giesen, 21 Tex. Civ. App. 334, 51 S. W. 44; Davis v. Sisk, 49 Tex. Civ. App. 193, 108 S. W. 472; Downey v. Hatter, 48 S. W. 32; Blair v. Slosson, 27 Tex. Civ. App. 403, 66 S. W. 112; Preston v. Breedlove, 36 Tex. 96; Thomas v. Hammond, 47 Tex. 42; Hansen v. Yturria, 48 S. W. 795; Pishkos v. Wortek (App.) 18 S. W. 788; Ackerman v. Bundren, 1 White & W. Civ. Cas. Ct. App. § 1306. The goods were not ordered by Whisenant and were not shipped until the writing of August 31st had been signed by both of the parties and the conditions imposed in the printed literature had been acquiesced in by Whisenant. The contract of sale out of which this action arises was thus finally consummated under the writing and imposed conditions, which constituted the complete contract as theretofore agreed upon.

It thus follows that the sale was made under a contract violative of our Anti-Trust Law, and no recovery can be had for the purchase price.

In all of its material aspects, the case is in line with Newby v. W. T. Rawleigh Co., 194 S. W. 1173, recently decided by this court, not yet officially reported, in which the same conclusion was reached.

Appellee contends that the conditions in the printed literature to which we have adverted were mere suggestions in the nature of advice, were not binding on Whisenant, and constituted no part of the contract under which the goods were sold. We do not construe same as being mere suggestions, but regard them as conditions plainly imposed as a condition of the subsequent sale, and, when expressly or impliedly assented to by Whisenant, consummated a contract between the parties.

Reversed and rendered.