## W. T. RAWLEIGH CO. v. SMITH et al.
### (No. 1215.)

(Court of Civil Appeals of Texas. El Paso.
April 28, 1921. Rehearing Denied
June 16, 1921.)

**1. Appeal and error ⚖➝989—On question of sufficiency of evidence, only evidence supporting verdict considered.**

In determining whether there is sufficient evidence to sustain a verdict, an appellate court must reject all evidence favorable to the losing party and consider only that sustaining the verdict.

**2. Monopolies ⚖➝21—Province of court stated.**

In determining whether a contract for sales of goods for resale by the buyer violates the anti-trust statute (Vernon's Sayles' Ann. Civ. St. 1914, arts. 7796–7818), it is the province of the court to construe the original contract and also to construe facts found by the jury as to communications subsequent to the contract in connection with the original contract.

**3. Evidence ⚖➝437—Monopolies ⚖➝17(1)— Communications subsequent to contract held admissible and to render contract violative of statute.**

Though a contract for sales of goods to one purchasing for resale provided that it constituted the sole agreement, and that booklets, bulletins, and literature sent to the buyer

should be considered as educational and advisory, and not as altering the contract, evidence of subsequent communications *held* admissible to show that the seller restricted the buyer's territory, fixed the resale prices, and required the buyer to give his entire time to the business, and these facts, when established, render the contract violative of the Anti-Trust Law.

Appeal from District Court, Jones County; W. R. Chapman, Judge.

Action by the W. T. Rawleigh Company against J. F. Smith and others. From a judgment for defendants, plaintiff appeals. Affirmed.

Walter S. Pope, of Anson, for appellant
Jno. B. Thomas, of Anson, and E. T. Brooks, of Abilene, for appellees.

HARPER, C. J. Suit was instituted in the district court of Jones county, Tex., by the W. T. Rawleigh Company against W. J. Hendrix, principal debtor, and J. F. Smith, G. L. Goza, and W. A. Howard, as sureties or guarantors, for a balance of $1,543.53, besides interest upon open, verified account for goods, wares, and merchandise sold and delivered to W. J. Hendrix on or about June 10, 1916, and various dates thereafter fully shown on itemized and verified account attached to plaintiff's original petition.

Appellant alleged that appellee W. J. Hendrix on or about December 7, 1917, executed and entered into a written contract with appellant wherein he agreed to pay any balance due plaintiff for goods previously and subsequently purchased at wholesale price f. o. b. Freeport, Ill.; that appended to said contract and as a part of same is a guaranty contract executed on or about the same date by defendants J. F. Smith, G. L. Goza, and W. A. Howard, a copy of all of which was appended to plaintiff's petition in which they bound and obligated themselves to pay said account.

Appellees answered by general and special exception, general denial, denying that said goods, wares, and merchandise were sold under the contract sued on, but alleged that they were sold on a subsequent contract, or else a subsequent enlargement on said original contract; that appellants restricted appellee Hendrix to certain prescribed territory in which to sell said goods, to a certain price for which to sell said goods, and to the sole business of selling said goods, all of which was in violation of the Anti-Trust Laws of Texas (Vernon's Sayles' Ann. Civ. St. 1914, arts. 7796–7818), and in restraint of trade, and hence void. To which answer appellant answered with general and special exceptions and general denial and specially alleged that all communication between appellant and appellee Hendrix after the execution of said contract was merely educational and advisory and did not amount to a new contract or modify or change the contract sued on.

The case was submitted to the jury on the following special issues:

"Question No. 1: Did plaintiff and defendant W. J. Hendrix contract or agree that the territory in which the said W. J. Hendrix was to sell the goods of plaintiff was to be restricted?

"Question No. 2: Did plaintiff and defendant W. J. Hendrix contract or agree that defendant W. J. Hendrix was to sell the goods shipped him by plaintiff at a price fixed or to be fixed by plaintiff?

"Question No. 3: Did plaintiff and defendant W. J. Hendrix contract or agree that defendant W. J. Hendrix was to be restricted alone to the business of selling goods purchased by defendant W. J. Hendrix from the plaintiff?"

All of which were answered in the affirmative, and on which verdict the court rendered judgment that appellant take nothing and appellees recover of appellant their costs.

Motion for new trial was filed, presented, and overruled, and the case is now properly and regularly before this court on appeal.

Assignments 1 and 9 insist that the court should have instructed a verdict for the appellant, and that the judgment entered is contrary to the law and the evidence, and 2, 3, and 4 urge that there is no evidence to support the findings of the jury to the three special issues submitted.

[1] The following are some of the facts relied upon by appellee to support the verdict. We confine ourselves to these matters because the rule is that, in passing upon whether there is sufficient evidence to sustain a verdict, an appellate court must reject all evidence favorable to the losing party, and consider only that sustaining the verdict, and if the jury might have reached such a verdict on the evidence, the court on appeal cannot set it aside. Cartwright v. Canode, 106 Tex. 502, 171 S. W. 696.

The exact question presented is that the evidence in the record has no probative value as a defense to the cause of action asserted by the plaintiff. The appellant objected to its admission by the court, and has assigned errors because it was not competent evidence to vary the provisions of a written contract.

The account sued on is an open verified account showing items for the years 1916, 1917, and 1918. The contract recites:

"Renewal Contract.

"(1) This contract made at the city of Freeport, state of Illinois, a corporation, between the Rawleigh Company, seller, and Hendrix, * * * of Texas, buyer.

"(2) That for and in consideration of the promises hereinafter contained to be kept and performed by the parties hereto, the seller * * * agrees to sell in such reasonable quan-

tities as the buyer may from time to time desire to purchase goods, wares, and merchandise manufactured or sold by it. But seller shall have the right to limit sales and shipments to the buyer or refuse to make any further sales and shipments should said buyer fail to make payments as agreed.

"(3) All goods sold to be delivered f. o. b. Freeport."

(4) Provides for the price.

(5), (6), and (7) provide for payments and the manner thereof.

(8) Sale of wagon to buyer.

(9) Seller agrees to repurchase all unsold goods.

(10) Provides means of terminating contract. To terminate in all events December 31, 1918.

(11) Agreement to extend by making new contract.

"(12) It is further understood and agreed that any and all booklets, bulletins, folders, leaflets, letters, and all literature of all nature which the seller may mail or send out to the buyer shall in no wise alter, modify, change, or effect this agreement, and shall only be considered as educational and advisory.

"(13) And it is further understood and agreed by and between the parties hereto that this contract includes and does and shall constitute the sole, only, and entire agreement between the parties hereto, and further that this contract cannot and shall not be changed or modified in any particular whatsoever by any employee or representative of the seller in any capacity, unless any such change or modification shall first be specifically reduced in writing and signed by both of the parties hereto, and then any such change or modification shall only be effective after the corporate seal of the seller shall have been duly affixed thereto."

The record discloses that this is a renewal contract of a similar one for the years preceding back to 1916.

Appended to this contract was an agreement executed by appellants Smith, Goza, and Howard by which, "in consideration of the extension of further time to the above-named buyer in which to pay his account for goods previously bought, and in consideration of extending further credit, they jointly and severally guaranteed * * * all moneys due and that may become due said seller under the terms of the above contract."

The defendant Hendrix testified:

"After the contract was executed I received the following:

" 'The W. T. Rawleigh Company, by C. P. Kiplinger, correspondent:

" 'We inclose vouchers describing the territory you selected: Part of Jones county, Texas, west of a line running north and south Stamford, Ruson, and Truby and north of the wagon road running west of Truby to the county line. Please sign and return the original and keep the duplicate for future reference.

" 'We are inclosing this with the understanding that you will select your headquarters in locality. * * *'

"Inclosed with this was the following instrument:

" 'Territory Selection Folder No. 5856. The W. T. Rawleigh Company, Freeport, Ill.

231 S.W.—51

" 'Gentlemen: I have your notice of acceptance of my contract. My selection of territory is described below. Please reserve all the territory for me except the incorporated municipalities therein and make a record of my selection upon receipt of this. I will complete my arrangements and expect to order first shipment of products shortly and will begin selling them promptly after their arrival.'

"I received those instruments after I had signed the contract. I sold a few of their goods out of that territory. I sold a few in the corner of Fisher and Stonewall counties. I wrote the company about it some of the customers in that corner of the counties were wanting me to come over on their territory. There was nobody selling those things on their side. [This letter was not produced.] The substance of this letter was that if I worked my territory as I should and as often as I should and as close as I should that I wouldn't have any use to cross out of it, be no need for me crossing out of it. I replied to that letter and explained it more fully. They replied that they thought I was a little peeved, and in it objected to me having any other territory. I never went out of the territory that they had given me any more after that except to stay all night when I was near the line. Did not sell anything outside of the territory except to leave something to pay for my night lodging. As to whether I followed any other trade or profession during that time I tried to farm a little in 1918. I got letters from them stating that they expected me to put in every day of my time in that business, at least five days in every week, in that business and no other.

"I got letters from them relative to selling their goods only. A letter dated April 15, 1918, contained the following: 'Don't be discouraged, just keep out on the road five and a half and six days each week and you are going to come out all right yet.' "

There are many letters and pamphlets and circulars copied in the statement of facts which have very little, if any, probative value, not copied here because the above will suffice for a predicate for the purposes of this opinion.

The first proposition is that—

"It is the province of the court, not the jury, to construe a written contract and where a contract specifically directs the exact method of its changes and modifications and provides that all letters, leaflets, and writing sent from plaintiff to defendant shall be merely educational and advisory it becomes the duty of the court to examine the evidence offered by the defendant, and if said evidence does not show that the contract has been so changed as its terms provide it was the duty of the court to instruct the jury to return a verdict for the plaintiff."

It will be noted that the appellee opposes a recovery in this case on the grounds that the transaction was in contravention of the Texas anti-trust statutes because under the contract, supplemented by letters and instructions the plaintiff sent Hendrix, who was governed thereby, the latter was required to confine his sales of the plaintiff's

products to a designated territory to sell them at a designated retail price, and to devote all his time to this project, to the exclusion of other employment.

[2] It is true that it is the province of the court to construe the original contract, and also, after the jury had found the facts, to construe these after facts in connection with the original in arriving at the legal conclusion as to whether or not the anti-trust statute had been violated thereby.

[3] This court has upon two occasions passed upon these identical questions and has held to the contrary of appellant's contentions. Newby v. Rawleigh Co., 194 S. W. 1173; Whisenant v. Shores Mueller Co., 194 S. W. 1175. These cases were so nearly on all fours of the facts of this one and were so carefully considered that we think a reference thereto for our views fully expressed is sufficient.

We desire also to cite with approval the case of Caddell v. Watkins Med. Co., 227 S. W. 227, where additional logical and potent reasons are assigned for holding transactions of this kind obnoxious to provisions of our anti-trust statutes.

Finding no error, the cause is affirmed.