### W. T. RAWLEIGH CO. v. MARSHALL et al. (No. 6473.)

(Court of Civil Appeals of Texas. Austin. Dec. 4, 1922.)

**1. Monopolies ⊂⊃21—Evidence held sufficient to support findings of restrictions of business of buyer by manufacturer of goods.**

In an action by a manufacturer against the buyer of his products to recover a balance due, evidence *held* sufficient to support findings by a jury on special issues that the buyer agreed to continue to sell the manufacturer's goods in a specified territory and in no other territory, according to a prior contract, and that there was an agreement between the parties that the buyer should carry on no other business.

**2. Monopolies ⊂⊃17(2)—Contract between manufacturer and buyer of goods held monopolistic.**

Under Rev. St. arts. 7796, 7798, defining trusts and conspiracies against trade, article 7799, declaring trusts, monopolies, and conspiracies in restraint of trade illegal, and article 7807, providing that contracts or agreements in violation of the foregoing and other similar statutes shall be void and unenforceable, a contract between a manufacturer and a buyer of goods that the buyer should sell them in a specified territory, and pursue no other business, was illegal as contrary to the statutes and public policy.

**3. Commerce ⊂⊃40(1)—Voluntary mingling of legal and unlawful transactions held to render commerce, interstate in part, subject to state law.**

Where a manufacturer in another state sold goods to a buyer within the state, and contracted that the goods were to be sold by the buyer in specified territory, and that the buyer was to engage in no other business in violation of Rev. St. arts. 7796, 7798, 7799, and 7807, relating to trusts and conspiracies in restraint of trade, the voluntary mingling of legal and unlawful transactions rendered the contract subject to the laws of the state, independent of congressional action.

Appeal from District Court, Hamilton County; J. R. McClellan, Judge.

Action by the W. T. Rawleigh Company against J. F. Marshall and others. From judgment for defendants in a second trial after a former judgment for defendants was reversed and remanded, plaintiff appeals. Affirmed.

H. E. Chesley, of Hamilton, for appellant. A. R. Eidson, of Hamilton, for appellees.

BRADY, J. [1] This is the second appeal of this case; our opinion upon the first appeal being reported in 220 S. W. p. 1111. The judgment of the trial court was reversed and the cause remanded for a new trial, because the court's conclusions of law, upon which it rendered judgment for the appellees, were not sustained by its findings of fact. We held, specifically, that the fact that appellee Marshall pursued the same business methods in the sale of goods purchased from appellant that he pursued under the former illegal contracts, and that he was under the impression that he was required to do so by appellant, could not affect appellant; such construction of the new contracts being erroneous, and it not appearing that appellant induced Marshall to place such construction upon the contracts, or that it had any knowledge that he had done so.

On the last trial the cause was submitted to a jury for special findings. The jury found that there was an agreement between the appellant and appellee Marshall that the latter was to continue to sell appellant's products in a certain prescribed territory, and in no other territory, under the contract sued on, as he had done under the contract of 1912, which was the first contract between the parties. The jury made the further finding that there was an agreement and contract between the parties that Marshall was to have no other business but that of selling Rawleigh products, and that the agreement entered into in 1912 continued during the years 1913, 1915, and 1916, until the termination of the contract, by the acquiescence and performance of both parties.

Although the evidence was conflicting, we have concluded that it was sufficient to support the finding upon each of these issues, as will be briefly indicated hereafter. The vice in the contract of 1912, which was admittedly illegal, was that appellant had awarded to appellee Marshall certain ex-

clusive territory in Hamilton county, Tex., in the sale of its products, and that the agreement restricted him to the designated territory in the conduct of his business. The written agreement and contract further required Marshall to have no other business but that of selling the products of appellant. As we have pointed out above, the jury found adversely to appellant, to the effect that these restrictions were continued by agreement of the parties under the later contracts, which were the basis of the sales in controversy. Under these findings, if supported by evidence, it is clear that our statutes against trusts and conspiracies against trade, found in articles 7796, 7798, Revised Statutes, have been violated, and that such acts and contracts are expressly declared illegal by article 7799, and by article 7807 they are made absolutely void and not enforceable, either in law or in equity.

[2] It is contended by appellant's counsel that the evidence on the second trial was no stronger than on the first, that the new contracts were in form legal and free from the vices of the original contract, and that the whole defense, under the evidence, rests upon the erroneous impressions of appellee Marshall, with respect to exclusive territory and with respect to his right to engage in any other business. It is argued that Marshall himself testified that he thought the new contracts were the same as the old, and that he did not think the former were modified or changed; nor was he informed by any one that there had been any modification or change in the contracts; and that there is no evidence in the record showing that Marshall was prohibited from selling his goods anywhere he pleased, or from engaging in any other business. We have carefully considered the evidence, and are of the opinion that it is sufficient to support the conclusion that it was the understanding of both appellant and appellee Marshall throughout their course of dealing, notwithstanding the form of the contracts, that Marshall should not sell the products of appellant except in the restricted territory reserved for and allotted to him by appellant, which was never changed, and that he was to have no other business or occupation than that of selling appellant's products. The settlement report introduced in evidence and prepared by the traveling auditor of appellant, and dated December 28, 1916, shortly after the close of their business dealings, expressly designates a part of Hamilton county, Tex., as the territory of appellee Marshall, and in immediate relation to the summary of his monthly balances during the years 1914, 1915, and 1916. This report was compiled and indorsed by the traveling auditor, who was the same person who originally specified the exclusive territory under the contract of 1912.

There is also in the record a number of letters written by appellant during the years 1915 and 1916, relating to a renewal of the yearly contracts, which specifically recognize the existence of the original designation of territory, urging Marshall to renew his contract in order to retain his territory, and suggesting that the company would doubtless receive many applications for that territory, and urging Marshall to give more time to the business, "to make good or to get out and stay out." In the letter of January 31, 1916, we find this language:

"You cannot expect us to reserve for you a valuable territory, sell you products on credit, if you loaf around home about two-thirds of your time the first six months of the year, then get out and work a little in the last six months, when collections are good and money is the most plentiful."

There are other letters along the same line, which amply justify the inference that appellant was continuing to recognize Marshall's right to enjoy and to restrict him to the territory originally allotted, and expected him to engage in no other business, while under contract with it. Indeed the tenor of these letters not only indicates the understanding and purpose of the company to continue to impose these restrictions upon Marshall and to bind itself not to award the designated territory to any one else, but the inference is fair that appellant had pursued the plan of parceling out the whole state of Texas, or a great portion thereof, into exclusive territories to be awarded to dealers with whom it could make satisfactory contracts. These facts do not appear from the face of the later contracts, but the evidence shows that the same methods were pursued. Such transactions are in the teeth of the public policy of this state, and in plain violation of our statutes. It must be remembered that this is not a case of agency. Appellant has not elected, as it might legally have done, to transact business in this state through agents confined to designated territory, and giving their exclusive time to the company's business, but the system of business pursued is with dealers, who buy the products outright and have title to the goods. Cases illustrative of the holdings of our courts upon similar transactions are: Rawleigh Co. v. Smith (Tex. Civ. App.) 231 S. W. 799; Caddell v. Watkins Medicine Co. (Tex. Civ. App.) 227 S. W. 227; Newby v. Rawleigh Co. (Tex. Civ. App.) 194 S. W. 1173; Whisenant v. Shores Mueller Co. (Tex. Civ. App.) 194 S. W. 1175; Armstrong v. Rawleigh Medicine Co. (Tex. Civ. App.) 178 S. W. 582; Watkins Medical Co. v. Johnson (Tex. Civ. App.) 162 S. W. 394; and Texas Brewing Co. v. Templeman, 90 Tex. 277, 38 S. W. 27.

The views stated lead to the conclusion that the findings of the jury find support in

the evidence, and that judgment was properly entered denying appellant a recovery. We have examined all the assignments, and find that no reversible error was committed; therefore the judgment will be affirmed.

[3] On the first appeal, the writer indicated that the case probably fell within the rule announced in Albertype Co. v. Feist, 102 Tex. 219, 114 S. W. 791. Upon further consideration of this point, we are of the opinion that the case is ruled by Fuqua v. Pabst Brewing Co., 90 Tex. 298, 38 S. W. 29, 750, 35 L. R. A. 241. While the transactions were in part interstate commerce and not subject to state regulation without the consent of Congress, the parties by agreement voluntarily went further, and dealt with the subject after it had ceased to be an article of interstate commerce, so as to impose and to continue to impose illegal restrictions upon the pursuit of business wholly within the state. The case last cited holds that such voluntary intermingling of legal and unlawful transactions renders the contract subject to the law of the state, independent of congressional action. We think the principle is applicable here. The same holding was made by the San Antonio Court of Civil Appeals in the case of Caddell v. Watkins Medicine Company, 227 S. W. 226. It should be added that in the Albertype Co. Case, the restrictions which were held by the Court of Civil Appeals to be illegal, under the Texas laws, did not relate to any restraint upon the business of the purchaser to be transacted within the state, but were wholly upon the Albertype Company, the vendor. This, perhaps, is a sufficient differentiation of that case from Fuqua v. Brewing Co., supra; but, in any event, we think the latter case is directly in point and controlling.

Affirmed.