### W. T. RAWLEIGH CO. v. FISH et al.
### (No. 248.)

(Court of Civil Appeals of Texas. Eastland. Jan. 7, 1927. Rehearing Denied Feb. 11, 1927.)

1. Monopolies ⚖️17(1)—Contract for sale of goods held not to limit territory, price, or services of defendant, and did not violate state Anti-Trust Law (Vernon's Ann. Civ. St. 1925, art. 7426 et seq.).

Contract for sale of goods *held* not limited to any specified territory or to any specified price, or to limit defendant to sale only of plaintiff's goods, and was not in violation of state Anti-Trust Law (Vernon's Ann. Civ. St. 1925, art. 7426 et seq.).

2. Evidence ⚖️471(2)—Testimony of defendant, that he considered territory for resale of goods limited to show violation of Anti-Trust Law, held mere conclusion (Vernon's Ann. Civ. St. 1925, art. 7426 et seq.).

In action on contract for sale of goods defended on ground that contract violated Anti-Trust Law (Vernon's Ann. Civ. St. 1925, art. 7426 et seq.), testimony of defendant that he considered his territory for resale of goods limited to particular part of county is mere conclusion.

3. Monopolies ⚖️21—Defendant has burden of proving contract against Anti-Trust Law in action thereunder for goods sold (Vernon's Ann. Civ. St. 1925, art. 7426 et seq.).

In action on contract for goods sold, defendant has burden of showing that contract was in violation of Anti-Trust Law (Vernon's Ann. Civ. St. 1925, art. 7426 et seq.)

4. Monopolies ⚖️17(1)—Limitation of territory in which buyer could resell goods relied on to show contract violated Anti-Trust Law must be contractual (Vernon's Ann. Civ. St. 1925, art. 7426 et seq.).

Limitations as to territory in which seller's articles could be resold by buyer, relied on to show violation of Anti-Trust Law (Vernon's Ann. Civ. St. 1925, art. 7426 et seq.), must be contractual; it not being sufficient that they were mere directions by seller unless buyer contracted to be bound by directions.

5. Monopolies ⚖️21—Agreement to be bound by seller's instructions making contract in violation of Anti-Trust Law is not conclusively shown by evidence that buyer observed instructions (Vernon's Ann. Civ. St. 1925, art. 7426 et seq.).

That buyer observed directions of seller as to limitation of territory and services in which seller's products might be sold is not conclusive evidence that buyer agreed to be so bound, so as to bring contract within prohibition of Anti-Trust Law (Vernon's Ann. Civ. St. 1925, art. 7426 et seq.).

Appeal from Comanche County Court; R. A. Luker, Judge.

Action by the W. T. Rawleigh Company against Frank D. Fish and others. Judgment for defendant named, and plaintiff appeals. Reversed, and judgment rendered for plaintiff.

Y. W. Holmes, of Comanche, for appellant. Callaway & Callaway, of Comanche, for appellees.

LITTLER, J. Plaintiff, W. T. Rawleigh Company, sued defendant Frank D. Fish for balance for goods sold under a contract, and sued H. D. Fish and W. T. Rupe as guarantors of the amount, under a guaranty contract signed by them at the same time the original was signed and being attached to it. The guaranty contract provided any agreed sum due by Frank D. Fish should be conclusive on the guarantors. Said F. D. Fish executed to plaintiff instrument agreeing he was due a balance of $484.03 on June 30, 1923, and agreeing to pay same; and plaintiff also sued upon this written instrument, but admitted credits thereon of $237.10 and leaving a balance of $246.93.

Defendants set up two grounds of defense: First. That the contract was in violation of the Anti-Trust Laws, in that plaintiff represented that choice of territory was one of the most important considerations, and that plaintiff formulated certain rules and regulations whereby parties making contracts were restricted to certain territory in which to resell goods bought from plaintiff; and that defendant, through such, was induced to make application designating territory in which he was to sell goods as the north half of Comanche county. Second. That the contract, together with literature sent out by plaintiff, obligated defendant F. D. Fish to give all his time to selling plaintiff's products. Defendant pleaded that by the contract and literature he was restricted in territory, and sold no other products, and devoted none of his time to any other occupation.

The cause was tried without a jury, and the court rendered judgment for defendant, to which plaintiff excepted and gave notice of appeal, and duly perfected same, and the cause is now before this court for review.

The record discloses only one assignment of error, as follows:

"The court, who tried the cause without a jury, erred in rendering judgment for defendants, and in failing to render judgment for plaintiff as prayed for; because the plaintiff's evidence which was uncontroverted and in writing, established its claim, as set up, and the only two defenses set up by defendants, that defendant was limited in the territory in which he might sell products purchased from plaintiff under the contract, and was required to give all his time to sale of the goods, were both wholly unsupported by any evidence, there being no evidence of any mutual agreement to limit territory or to give all time to business."

---

⚖️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The contract forming the basis for the suit is as follows:

## "Contract.

"This contract made and entered into at the city of Memphis, Tennessee, by and between the W. T. Rawleigh Company, an Illinois corporation, hereinafter called the seller, and F. D. Fish, of Owens, in the state of Texas, hereinafter called the buyer, witnesseth:

"Whereas said buyer desires to purchase of the seller, at wholesale, such of its manufactured products as the seller shall hereafter determine to sell to the said buyer; the kind and quality of which is to be optional with the said seller;

"The seller agrees to sell and deliver to the buyer f. o. b. Memphis, Tennessee, or at its option f. o. b. Freeport, Illinois, or any of its branch houses or at any other point agreed upon, such of its products as herein above specified and at current wholesale prices, unless prevented by strikes, fires, accidents or other causes beyond its control; the said buyer to furnish signed orders for such goods.

"The buyer agrees to pay said seller at invoice price for all products so purchased under this agreement by cash, or by installment payments satisfactory to the seller, subject to the discount as shown in current discount sheets and subject to paragraph 6 hereof.

"The seller will at its option also sell to the buyer a wagon or a body suitable for auto chassis, for cash, or partly or wholly on time, such as the buyer may choose from the seller's Current Wagon Catalog, circulars, or other descriptions.

"It is hereby further agreed that either party may at any time before the expiration of this contract by written notice, terminate this agreement and when so terminated, then account then due and owing shall become immediately due and payable. If not so terminated, this agreement shall expire by limitation on the 31st day of December, 1923, and if buyer refuses or neglects to furnish acceptable renewal contract, the full amount due hereunder shall be due and payable promptly.

"It is further agreed that if dealings conducted hereunder are mutually agreeable and satisfactory that a new contract may be entered into for the succeeding year; but the refusal on the part of the seller to enter into a new agreement shall not in any wise affect the agreement herein on the part of the buyer to pay his account.

"Seller agrees to purchase from buyer any products (wagon, auto body, and sample cases excepted), he may have on hand, and pay or credit buyer with the wholesale price current when they are received by seller, provided buyer returns them during the life of contract or promptly after termination or explanation of same, and provided freight is fully prepaid to point seller designates said products are to be returned; buyer to pay seller the actual expense of inspecting and overhauling same.

"It is mutually understood that the seller will furnish the buyer from time to time with educational salesmanship literature, consisting of Rawleigh's Weekly Guide Book, and other booklets, bulletins, circulars, leaflets, and letters of advice and suggestions for the sole purpose of aiding and assisting buyer in making sales and collections; but it is expressly agreed that nothing contained in any of the aforesaid literature, letters, booklets, bulletins, leaflets, etc., shall be taken in any wise to alter, modify, change or affect this agreement and shall only be considered as educational and advisory; and it is further expressly understood and agreed that any advice or suggestions contained therein is not to be considered by the buyer as orders, directions or instructions, nor in any binding on him; it being mutually and fully understood and agreed that the buyer is not an Agent or Representative of the seller, but in business strictly for theirself.

"It is further understood and agreed by and between the parties hereto that this contract includes and does and shall constitute the sole, only and entire agreement between the parties hereto, and further that this contract cannot and shall not be changed or modified in any particular whatsoever by any employé or representative of the seller in any capacity, unless any such change or modification shall first be specifically reduced to writing and signed by both of the parties hereto, and then any such change or modification shall first be specifically reduced to writing and signed by both of the parties hereto, and then any such change or modification shall only be effective after the corporate seal of the seller shall have been duly affixed thereto.

"In witness hereof, the parties hereto have set their hands and seals, the seller in its corporate name by its president thereunto duly authorized, and its corporate seal hereunto affixed, and the said buyer in its own proper person.

"The W. T. Rawleigh Company,
"By W. T. Rawleigh, President.
[Corporate Seal.]        Frank D. Fish.    [Seal.]
"Accepted Nov. 16, 1922, at Memphis, Tenn."
(Above is rubber-stamped on)

"For and in consideration of the W. T. Rawleigh Company, the above-named seller, extending credit to the above-named buyer, we, the undersigned, do hereby jointly and severally guarantee unto said the W. T. Rawleigh Company, the above-named seller, unconditionally, the full and complete payment to said company of any and all indebtedness which may become due or owing under the terms of the above and foregoing contract by the buyer names as such therein; and to all the terms, provisions and agreements contained in said contract we fully agree and assent, hereby waiving acceptance of this contract of guaranty by the seller, and all notice of any nature whatsoever, and agree that the written acknowledgment by the said buyer of the amount due or owing on his account, or that any judgment rendered against him for moneys due the seller shall in every and all respects bind and be conclusive, jointly or severally, against the undersigned. And we further agree that in any suit brought on this contract of guaranty by the seller, no other or further proof shall be required of it than to establish the amount or sums of money due and owing to it from said buyer, and when so proven shall be conclusive and binding upon the undersigned, and that it shall not be necessary for said seller in order to enforce this contract of guaranty to first institute suit nor exhaust its legal remedies against said above named buyer, and agree that any extension of time of payment shall not release us from liability under this contract of guaranty. It is hereby mutually understood and agreed that this contract of

guaranty is conclusive and binding on the party or parties who sign it, whether the same is signed by any other party or parties or not, and that any statement or representation made by any person as to the undertaking of the guarantor or guarantors, other than as herein expressed, or as to who or how many parties are to sign this guaranty shall in no wise affect the rights of the company; and it is mutually understood that this is to be a continuing guaranty; and any notice in any way affecting the responsibility or liability of the signers hereto, in order to become effective and binding upon the above named seller, shall be reduced to writing and delivered by register mail to the office of seller at Memphis, Tennessee.

"H. D. Fish          Farmer          Owens, Texas.
"W. T. Rupe          Farmer          Blanett, Texas."

After the introduction of the above contract, plaintiff rested its case, and the defendant testified that he filled out a blank application to sell products in the north half of Comanche county and said application was granted, and he was authorized to sell in the north half of said county. He further testified that he had made some sales in Brown county, which were approved by the company, and further testified that he considered that his territory was confined to the northern part of Comanche county. Defendant further testified that he devoted all of his time to the sale of the Rawleigh products and sold no other products except those during the time he was engaged with said company. He further testified that it was his understanding that the contract with said company required him to do this.

It appears that the only defense was that the contract was in violation of the Anti-Trust Law of Texas (Vernon's Ann. Civ. St. 1925, art. 7426 et seq.).

[1] From a close inspection of the contract introduced in evidence by plaintiff, we fail to find any provision limiting the sale to any specified territory or to any specified price, or limiting the defendant to the sale only of appellant's goods. The contract provides that nothing contained in any literature furnished the defendant by plaintiff should be taken in any wise to alter, modify, change, or affect their said agreement.

[2] The testimony of the defendant to the effect that he considered his territory limited to the northern part of Comanche county is only a conclusion of the witness and is not sustained by the terms of the contract or any other testimony offered in evidence.

[3-5] There was nothing offensive to the statute in the written contracts made and entered into between appellant and Fish; and if these alone constituted the agreements upon which Fish and the appellant conducted their business, the court should have given a verdict in favor of the plaintiff. It devolved upon the appellee to prove that the contract, or a part of it, which formed the basis of the sale of the goods purchased by Fish from appellant, contained stipulations repugnant to the Anti-Trust Law. The limitations which the appellees allege were placed upon Fish, and upon which they rely to show a violation of the statute, must have been contractual. It is not sufficient that they were mere directions from appellant, or even instructions, unless Fish contracted to be bound by those directions or instructions. Nor is the fact that he did observe and obey such directions and instructions conclusive evidence that he agreed to be so bound. In suits of this character the courts are not concerned about the manner of doing business adopted by the parties, but must be guided by the character of the contract which fixed their rights and liabilities. The question is, not what was the business policy of the appelland, or what Fish did under the advice and direction of the appellant in choosing territory and making sales, but what did his contract obligate him to do? Unless he bound himself by a contract to do the offensive things, although he did them, he cannot invoke the Anti-Trust Law to defeat the debt he owes. McConnon & Co. v. Marshall (Tex. Civ. App.) 280 S. W. 323; W. T. Rawleigh Co. v. Land et al. (Tex. Com. App.) 279 S. W. 810; Id. (Tex. Civ. App.) 261 S. W. 186.

We therefore conclude that the trial court erred in rendering judgment for defendant, and the cause is reversed and judgment here rendered for plaintiff in the sum of $246.93, with 6 per cent. interest from June 30, 1923.