within the rule announced in Vineyard v. State, 96 Tex. Cr. R. 401, 257 S. W. 548.

Believing ourselves to be without authority to reverse because of the alleged excessive verdict, under the facts of this case, and finding no error in the record, the judgment is affirmed.

PER CURIAM. The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals and approved by the court.

## On Motion for Rehearing.

LATTIMORE, J. Appellant strenuously insists in his motion for rehearing that the evidence does not justify the heavy penalty inflicted upon him, and we have again reviewed the testimony. As stated by us, in substance, in our former opinion, it is no justification for reversal that this court might feel that the facts offered mitigating circumstances. Under our practice, the jury are the exclusive judges of the weight of the testimony. There is no question under the facts here but that appellant with a pistol shot and killed deceased, who was standing by the side of the car in which appellant was at the time of the shooting. Neither is there any question of the fact that there had been previous trouble between the two, in which deceased took part in administering a whipping to appellant. Deceased seems to have been unarmed at the time of the killing. The killing may have been the result of malice, or it may have been the result of an agitated conditon of the mind resulting from fear. The settlement of these fact issues was for the jury, and, there being testimony in the record upon which the verdict found support, we do not feel at liberty to disturb it.

The motion for rehearing is overruled.

---

**CHUNN et al. v. W. T. RAWLEIGH CO.**
(No. 7252.)

Court of Civil Appeals of Texas. Austin.
July 5, 1928.

J. A. Thomas, Louis D. Gayer, and Lloyd Kerr, all of San Angelo, for appellants.

Hill, Neill & Hill and Robert P. Brown, all of San Angelo, for appellee.

BAUGH, J. Appellee sued the appellants in the county court of Tom Green county, for a balance due on a note originally for $939.-34, interest and attorney's fees. The case was tried to the court without a jury, and judgment rendered for appellee, from which this appeal was prosecuted.

Among other defenses urged in the trial court, one was that the consideration for said note arose from a contract between the parties, which violated the anti-trust laws of Texas, and that the note was therefore unenforceable.

We find nothing new in this appeal. The contracts introduced in evidence by the appellee, which were renewed annually from 1920 to 1925, were identically or substantially the same as those that have been repeatedly before the courts of this state. They appear to be a standard form used by the appellee in conducting its business in this state. This contract is quoted in W. T. Rawleigh Co. v. Land et al. (Tex. Civ. App.) 261 S. W. 187, Id., 115 Tex. 319, 279 S. W. 810, and in W. T. Rawleigh v. Fish (Tex. Civ. App.) 290 S. W. 798. As stated in the Land Case, the contract in and of itself means little if anything. Clearly it contemplated further dealings between the parties in consummation of its provisions. In the instant case, appellants pleaded a contract in violation of law, and the sufficiency of their pleadings was not questioned by the appellee. In addition to the contracts thus introduced by appellee J. T. Chunn, the appellant, who dealt with appellee, testified as follows:

"As soon as I started to selling the Rawleigh Company's goods, I wrote to them and asked them what my territory would be. They wrote back and told me just how much territory I could have, and what all of its boundaries were, and that they wouldn't let anybody else sell their goods in that territory, and for me not to sell anything outside of it. I wrote back to the company and told them I'd stay in that territory strictly.

"I got other letters from the home office of

the Rawleigh Company fixing the prices at which I had to sell all of their goods, and they told me not to sell for any other price, and I answered and I told them that their price lists would be followed.

"I also got letters from the Rawleigh Company, informing me of the fact that I had to work five days a week on the road, and keep a record of all my sales, collections, and purchases, and make reports to them every week, showing the number of days I had spent and places I had gone, the goods I had sold, and a lot of other paper work that they requested; took all the time I had. I asked them once or twice if I couldn't raise a small crop that could be raised by working at it for a day or two at a time occasionally, and they wrote back that, if I worked for the Rawleigh Company like I ought, I wouldn't need anything else, and, if I wanted to stay in the Rawleigh business, I couldn't sell anybody else's goods or put in any of my time on anything else.

"In addition to all these letters, the Rawleigh Company sent out field agents, who came around three or four times every year and went through all my books, took inventory of my stock of goods, went over my route with me, and those agents always told me that I had to stay in my territory, and sell at their prices, and put in all my time in the 'Rawleigh Business,' and that, as long as I did do those things and pay for the goods I got from the company, I could have my territory all to myself; but that, if I couldn't agree to conduct my business like they told me to, I couldn't handle their products. I had to promise all these agents that I would do just what they told me to, to keep from being cut off."

■ This testimony was neither controverted nor denied by the appellee. This testimony, under the decisions of this state, established a contract in clear violation of our anti-trust laws, and an extended discussion of that issue here would serve no useful purpose. See W. T. Rawleigh Co. v. Smith (Tex. Civ. App.) 231 S. W. 799; W. T. Rawleigh Co. v. Marshall (Tex. Civ. App.) 248 S. W. 153; W. T. Rawleigh Co. v. Watson (Tex. Civ. App.) 256 S. W. 955; W. T. Rawleigh Co. v. Hudson (Tex. Civ. App.) 290 S. W. 775; W. T. Rawleigh Co. v. Bradberry (Tex. Civ. App.) 290 S. W. 870; W. T. Rawleigh Co. v. Gober (Tex. Civ. App.) 3 S.W.(2d) 845; J. R. Watkins Co. v. Fred McMullan, 6 S.W.(2d) 823, decided by this court on May 2, 1928.

Nor is there any conflict in our holding herein with that of the Eastland court in the case of Rawleigh Co. v. Fish (Tex. Civ. App.) 290 S. W. 798, wherein a judgment in favor of the appellant against Fish on a similar contract was sustained by that court.

Speaking of the instructions and directions sent to Fish by the company, the Eastland court say:

"It is not sufficient that they were mere directions from appellant, or even instructions, unless Fish contracted to be bound by those directions or instructions."

Again, in the same opinion, the following language is used:

"Unless he bound himself by a contract to do the offensive things, although he did them, he cannot invoke the anti-trust law to defeat the debt he owes."

The court found in that case that Fish had not so contracted. However, in the instant case, we think the testimony of Chunn above quoted, which was uncontroverted by appellee, shows clearly that he did so contract. In any event, we think the record in this case discloses, as stated by the Supreme Court in the Land Case:

"That the written contracts between the parties, interpreted in the light of the actual practices between them, were prepared and signed for the purpose of violating the anti-trust laws of this state within the state, and that the obligations arose in consummating this purpose."

■ Having reached this conclusion, it follows that the illegality of the contracts out of which the note sued upon arose necessarily invalidates the note itself. We therefore reverse the judgment of the trial court, and here render judgment in favor of the appellants.

Reversed and rendered.