## McCONNAUGHY v. PENNOYER et al.

*(Circuit Court, D. Oregon. July 28, 1890.)*

1. **SUIT AGAINST STATE—INJUNCTION—SALE BY COMMISSIONERS.**
   A suit by a citizen of California to enjoin the persons constituting the board of land commissioners of the state of Oregon from selling certain swamp lands, claimed by the plaintiff, as forfeited to the state for non-compliance with a condition of a former sale of the same lands by the state to the plaintiff's grantor, is not a suit against the state of Oregon; it appearing that the legislation under which the defendants claim the right to act is unconstitutional and void, because it impairs the obligation of the contract of the state with such grantor.

2. **SWAMP LANDS—APPLICATION TO PURCHASE—CONTRACT.**
   An application for the purchase of swamp lands under section 3 of the act of October 26, 1870, for "the selection and sale" of swamp lands, from the date of its receipt and filing by the land commissioner constitutes a contract between the state and the applicant for the sale to the latter of the tract or tracts therein mentioned, with the right to the immediate possession thereof; and, on the performance of the co. ditions subsequent, of payment and reclamation, within the terms and requirements of said section, the applicant, or his assigns, is entitled to a patent therefor.

3. **SAME—OBLIGATION OF CONTRACTS—ACTS OCTOBER 18, 1878, AND FEBRUARY 16, 1887.**
   Section 9 of the act of 1878 does not, when fairly construed, include an application for the purchase of swamp land under the act of 1870, where there is no default in the payment of the 20 per centum of the purchase price, as provided in said act of 1870; but, if it does include such a case, then it is unconstitutional and void, as impairing the obligation of the contract of the state with the applicant, which gave him until 90 days after the publication of the notice of the filing of the map of such lands in the office of the clerk of the county in which they lie, to make such payment; and section 1 of the act of 1887, which declares all certificates of sale of swamp lands void on which the 20 per centum of the purchase price was not paid prior to January 17, 1879, is, in the case where the 20 per centum was paid when due, according to the contract of sale, whether before or after said day in 1879, unconstitutional and void for the same reason.

*(Syllabus by the Court.)*

In Equity. Suit for an injunction.
*Charles B. Bellinger,* for plaintiff.
*Lewis L. McArthur,* for defendants.

DEADY, J. By the act of March 12, 1860, congress granted to the state of Oregon the swamp and overflowed lands within its border.

On October 26, 1870, the legislature passed an act "providing for the selection and sale" of such lands. Sess. Laws, 54.

By this act it was made the duty of the governor, as land commissioner, to select such lands by means of deputies, who were required to return their selections to the commissioner for examination. Upon the selections being made in any county, the commissioner was required to make out, in duplicate, maps thereof, one copy of which was to be filed in the office of the clerk of such county, the date of which filing was to be certified by said clerk to the commissioner, and thereupon the latter was required to give notice of such selection and filing by publication

in a weekly paper, published in the county, for four successive weeks.

The act also directed the commissioner to sell such lands at a price not less than one dollar per acre in gold coin. Any citizen of the United States over 21 years of age might apply "for the purchase of any tract or tracts" of such lands by filing his application therefor with the commissioner, who shall indorse thereon the date of such filing, describing the same by the "survey," or, if no survey is made, then by fences, ditches, monuments, or other artificial or natural landmarks; and, in case of adverse applicants for the same parcel of land, the commissioner shall sell the same to the person whose application is first filed.

Within 90 days from the date of the notice aforesaid, 20 per centum of the purchase money must be paid to the commissioner, who shall "issue to the applicant a receipt therefor." The balance of said purchase money shall be paid, and proof of reclamation made, within 10 years from said date, when a patent shall issue to the applicant; but, in default of such proof and payment, the land "shall revert to the state, and the money paid thereon shall be forfeited."

On October 18, 1878, the legislature passed "an act providing for the selection, location, and sale of state lands, and the management and disposition of the proceeds arising therefrom," including swamp and overflowed lands, and the express repeal of sundry acts relating thereto, not including the act of 1870. Sess. Laws, 41.

By this act the governor was "appointed" land commissioner for the state, as he had been since 1862, by the act of October 15 of that year, (Comp. 1874, p. 629,) with power "to locate all the lands to which the state is entitled under the laws of the United States;" and the board of commissioners for the sale of school and university lands were authorized to sell the swamp and overflowed lands theretofore or thereafter "selected," not exceeding 320 acres to any one person at not less than one dollar per acre.

After providing at some length for the manner of applying for the purchase of swamp lands, and the purchase and conveyance of the same, the act (section 9) declares as follows:

"All applications for the purchase of swamp and overflowed lands, * * * made previous to the passage of this act, which have not been regularly made in accordance with law, or which were regularly made, and the applicants have not fully complied with all the terms and requirements of the law under which they were made, including the payment of the twenty per centum of the purchase price, are hereby declared void and of no force or effect whatever."

On February 16, 1887, the legislature passed an act, entitled, in part, "to declare void certain certificates of sale, and to forfeit certain lands," (Sess. Laws, 9,) the first section of which declares as follows:

"That all certificates of sale issued by the board of commissioners for the sale of school and university lands, and for the investment of the funds arising therefrom for swamp or overflowed lands on which the twenty per centum of the purchase price was not paid prior to January 17, 1879, are hereby declared void, and [of] no force or effect whatever; and said board of commissioners is hereby authorized and directed to cancel said certificates of sale."

These certificates of sale are the receipts provided for in the act of 1870.

The date, January 17, 1879, mentioned in this section, is the date of the act of 1878, plus the 90 days which elapsed before it took effect. Section 7 of this act provides:

"All swamp or overflowed lands reverting to the state under the provisions of this act shall be sold as provided in the act approved October 18, 1878, relating to swamp lands."

This suit is brought by the plaintiff, a citizen of California, to restrain the defendants, citizens of Oregon, constituting the board of land commissioners of the state, to restrain them from selling certain swamp lands claimed by the plaintiff, as having reverted to the state under section 1 of the act of 1887.

The cause was heard on a demurrer to the bill.

From the latter it appears that prior to October 18, 1878, Henry B. Owen had regularly applied, in pursuance of the act of 1870, for the purchase of certain swamp lands, thertofore certified to the state by the secretary of the interior as swamp and overflowed, under said act of 1860, including those now here claimed by the plaintiff; that thereafter, on November 23, 1881, and on April 3, 1884, and prior to the expiration of the 90 days from the date of the public notice provided for in the act of 1870, the said Owen duly paid to the board of land commissioners the 20 per centum required by said act on 43,207.60 acres of said lands, situate in Lake county, Or.; that about October 15, 1884, the plaintiff purchased said last-mentioned lands from Charles N. Felton, the grantee of Owen, and now occupies the same for hay and pasturage; and that he paid Felton for said lands the sum of $30,000, and assumed to pay the state the remainder of the purchase price therefor when it became due; that said defendants, assuming to act as the board of land commissioners, and pretending that the certificates of sale issued to Owen are void for the reason that the 20 per centum of the purchase price was not paid before January 17, 1879, have canceled the same, and have ordered said lands to be sold, under the act of 1887, as reverted to the state, and have actually sold about 1,000 acres thereof.

It is also alleged in the bill that the defendants are acting in this matter without authority of law; that the act of 1887, in so far as it declares the certificates given on the sale of the lands claimed herein by the plaintiff because the 20 per centum of the purchase price was not paid prior to January 17, 1879, is void and of no effect, because it impairs the obligation of the contract with the state, under which the plaintiff claims, for the sale of these lands, which are of the value of $50,000.

The demurrer to the bill is, in substance, that the suit is in effect one against the state, and therefore this court is without jurisdiction.

The question, is this a suit against the state? is the question in the case, and this involves the construction and validity of the state legislation on the subject.

If the legislation is invalid under which the defendants assume to act, they do not represent the state. They are acting without its authority, —without the authority of law,—and are responsible for their acts as private individuals. On the other hand, if this legislation is valid, they represent the state, and the suit, in substance and effect, is against the state. Such a suit is forbidden by the eleventh amendment to the constitution of the United States, which declares:

"The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States, by citizens of another state, or by citizens or subjects of any foreign state."

Fortunately, the law on this subject has been so carefully and explicitly laid down by the supreme court in numerous cases, from *Osborn* v. *Bank*, 9 Wheat. 738, (1824,) down to *Poindexter* v. *Greenhow*, 114 U. S. 270, 330, 5 Sup. Ct. Rep. 903, 962; *Allen* v. *Railroad Co.*, 114 U. S. 311, 330, 5 Sup. Ct. Rep. 925, 962, (1884;) *Hagood* v. *Southern*, 117 U. S. 52, 6 Sup. Ct. Rep. 608, (1885;) *In re Ayers*, 123 U. S. 443, 8 Sup. Ct. Rep. 164, (1887,)—that nothing remains for this court to do but to state the same and follow it.

In *Cunningham* v. *Railroad Co.*, 109 U. S. 446, 3 Sup. Ct. Rep. 292, 609, Mr. Justice MILLER, after stating that, "whenever it can be clearly seen that the state is an indispensable party to enable the court, according to the rules which govern its procedure, to grant the relief sought, it will refuse to take jurisdiction," proceeds to classify the cases in which jurisdiction has been maintained. One of these, the second, is where an individual is sued in tort for some act injurious to another, in regard to person or property, to which his defense is that he has acted under the orders of the government.

In this class of cases he says the defendant "is not sued as, or because he is, an officer of the government, but as an individual; and the court is not ousted of jurisdiction because he asserts authority as such officer. To make out his defense he must show that his authority was sufficient in law to protect him."

In support of this proposition the justice cites a number of cases decided in that court, including the then recent case of *U. S.* v. *Lee*, 106 U. S. 196, 1 Sup. Ct. Rep. 240, in which the plaintiff below maintained an action to recover the possession of certain real property against persons claiming to occupy as the agent and under the authority of the United States, on the ground that the alleged authority, which consisted of a purchase at an alleged tax-sale, was invalid.

In the able, and I think unanswerable, argument contained in the opinion of the supreme court by the late Mr. Justice MATTHEWS, in *Poindexter* v. *Greenhow, supra*, the question is thoroughly considered in the light of all the authorities, and the jurisdiction of the court unqualifiedly maintained.

The case was briefly this: On March 30, 1871, the legislature of Virginia authorized the coupons of the funded debt of the state to be re-

ceived in payment of taxes due thereto, and by subsequent legislation forbid their being so received.

The plaintiff in error and below regularly tendered the defendant, the collector of taxes, coupons in payment of his taxes, which were refused, and certain of his personal property was levied on for the same. The plaintiff then brought an action of detinue in a court of Virginia to recover his property, in which the defendant had judgment. From there the case was taken by a writ of error to the supreme court of the United States, where the judgment of the court below was reversed, and it was held that the legislation of Virginia, forbidding these coupons to be received for taxes, impaired the obligation of its contract with the plaintiff, and was therefore void; that, as the plaintiff had paid his taxes by the tender of his coupons, the defendant had no authority of law to enforce other payment by the seizure of his property; that in so doing the defendant ceased to be an officer of the law, and became a private wrong-doer, in which character he took and detained the property of the plaintiff.

In the course of the opinion, (page 288, 114 U. S., and page 913, 5 Sup. Ct. Rep.,) it is said:

"The *ratio decidendi* in this class of cases is very plain. A defendant sued as a wrong-doer, who seeks to substitute the state in his place, or to justify by the authority of the state, or to defend on the ground that the state has adopted his act and exonerated him, cannot rest on the bare assertion of his defense. He is bound to establish it. The state is a political corporate body, can act only through agents, and can command only by laws. It is necessary, therefore, for such a defendant, in order to complete his defense, to produce a law of the state which constitutes his commission as its agent and a warrant for his act. This the defendant in the present case undertook to do. He relied on the act of January 26, 1882, requiring him to collect taxes in gold, silver, United States treasury notes, national bank currency, and nothing else, and thus forbidding his receipt of coupons in lieu of money. That, it is true, is a legislative act of the government of Virginia, but it is not a law of the state of Virginia. The state has passed no such law, for it cannot; and what it cannot do, it certainly, in contemplation of law, has not done. The constitution of the United States and its own contract, both irrepealable by any act on its part, are the law of Virginia, and that law made it the duty of the defendant to receive the coupons tendered in payment of taxes, and declared every step to enforce the tax thereafter taken to be without warrant of law, and therefore a wrong. He stands, then, stripped of his official character. and, confessing a personal violation of the plaintiff's rights, for which he must personally answer, he is without defense."

Further on, (page 291, 114 U. S., and page 914, 5 Sup. Ct. Rep.,) after stating the difference in this respect between the government of a state, its agents, and the state itself, it is said:

"This distinction is essential to the idea of constitutional government. To deny it or blot it out obliterates the line of demarkation that separates constitutional government from absolutism, free self-government, based on the sovereignty of the people from that despotism, whether of the one or the many, which enables the agent of the state to declare and decree that he is the state; to say ' L'Etat c'est moi.' Of what avail are written constitutions, whose bills of right for the security of individual liberty have been written too often with the blood of martyrs, shed upon the battle-field and the scaffold, if their

limitations and restraints upon power may be overpassed with impunity by the very agencies created and appointed to guard, defend, and enforce them, and that, too, with the sacred authority of law, not only compelling obedience, but entitled to respect? And how else can these principles of individual liberty and right be maintained, if, when violated, the judicial tribunals are forbidden to visit penalties upon individual offenders, who are the instruments of wrong, whenever they interpose the shield of the state? The doctrine is not to be tolerated. The whole frame and scheme of the political institutions of this country, state and federal, protest against it. Their continued existence is not compatible with it. It is the doctrine of absolutism, pure, simple, and naked, and of communism, which is its twin; the double progeny of the same evil birth."

In *Allen* v. *Railroad Co.*, *supra*, the court allowed a perpetual injunction against the auditor of public accounts and treasurer of the state of Virginia, to prevent the enforcement of a tax by the seizure and sale of the plaintiff's property, for which coupons of the bonds of the state had been duly rendered and refused.

These cases go upon the theory that proceedings to enjoin the seizure and sale of property, or for the recovery of the possession of the same when seized, to enforce the payment of a tax for which a valid tender has been made, are defensive in their nature, in which the plaintiff does not seek to compel the state or its agent to do or perform any particular act, but to prevent or redress a wrong to his property by a person acting professionally on behalf of the state, but without the authority of law.

And that is this case exactly. The defendants, a board of commissioners for the sale of swamp lands, are assuming to sell certain of such lands as the property of the state. The plaintiff claims the lands under a contract of purchase from the state, and asks to have the defendants enjoined from doing an unlawful act, to his irreparable injury. The defendants claim that they are acting in obedience to an act of the legislature, which the plaintiff maintains is unconstitutional and void.

If the legislation under which the defendants assume to act is valid,—an act of the state of Oregon,—then the defendants stand for and represent the state, which, although not a party on the record, is, in substance and effect, the real defendant, and therefore the suit is forbidden by the eleventh amendment, otherwise not.

And, before proceeding to consider this question, it may be well to suggest that in this matter the defendants are not acting as governor, secretary, and treasurer of the state, but simply as a board of commissioners for the sale of the swamp lands belonging to the state.

The state constitution (article 8, § 5) constitutes these persons by their title of office, and during their continuance therein, "a board of commissioners for the sale of school and university lands," and subsequently the legislature devolved on them the additional duty of disposing of the swamp lands.

A qualified applicant for the purchase of swamp lands under the act of 1870 had a contract with the state for the sale and conveyance to him of the land specified in his application, from the receipt and filing of the

same, according to the terms and conditions mentioned in the act.  *McConnaughy* v. *Wiley*, 33 Fed. Rep. 452.

The transaction, as set forth in the statute, has all the elements of a contract of sale.   The statute is a formal, standing offer by the state of these lands for sale, on the terms therein mentioned, and an invitation to all qualified citizens of the United States to become purchasers thereof by filing an application for some specific tract thereof with the board, and complying with the subsequent conditions of payment and reclamation.

The purchaser, the applicant, is entitled to enter into the possession of the land at once, and commence the work of reclamation and cultivation, and appropriate the products thereof to his own use.   The application is a written acceptance of the offer of the state, in relation to the land described therein, and, on the filing of the same, the minds of the seller and the purchaser—the state and the applicant—came together on the proposition, and thenceforth there was an agreement between them for the sale and purchase of that parcel of land, binding on each of them, until released therefrom by some substantial default of the other, not overlooked or excused.

This contract, as soon as made,—as soon as the acceptance of the offer of the state is filed,—comes under the protection of that restraint on the power of the state which prohibits it from passing any law "impairing the obligation of contracts."   Const. U. S. art. 1, § 10.

The experience of a century, and more, has demonstrated that, but for this wholesome restraint on the action of the state legislatures, a contract with a state would be subject to modification or rescission with every whim of public opinion or gust of popular passion.

Section 1 of the act of 1887 is assumed in the bill as the legislation which impairs the obligation of this contract, and under which the defendants are wrongfully attempting to sell this land.   It expressly avoids all sales of swamp land on which the 20 per centum was not paid prior to January 17, 1879.   This is broad enough to include the purchase by Owen, under which the defendant claims.   But, as appears, the contract with Owen gave him 90 days after the publication of the notice in which to make this payment.   This period had not expired on January 17, 1879, and before it did expire the 20 per centum was duly paid and accepted by the board.

It appears that the legislature of 1887 undertook to annul this contract, and require the certificates given the purchaser to be canceled, on the ground that he had not complied with section 9 of the act of 1878, by paying the 20 per centum prior to January 17, 1879, the date when that act took effect.

But the act of 1878, fairly and reasonably construed, did not require such payment to be so made.   It declared void and of no effect applications where the purchaser had not fully complied with "the terms and requirements of the law" under which they were made, "including the payment of the 20 per centum of the purchase price."

Counsel for the defendants insists that this act must be construed as

requiring the payment of this 20 per centum prior to January 17, 1879, even if the same was not then due according to the terms of the sale, as stated in the act of 1870. If this be so, then the act is so far void, because it impairs the obligation of the contract of sale, whereby the purchaser was to have until 90 days after the publication of notice to make the payment in, without reference to when such publication should be made. The state had the right to make this publication whenever it was ready, and so compel the payment within 90 days thereafter; but it had no power to require or compel the payment sooner than this, and before it was due. This is a matter material to the purchaser. He ought not to be required to make this payment before it is due; and every moment of time which the law gives him to make the payment in prolongs, by so much, the expiration of the succeeding 10 years within which he may reclaim the land and pay the balance of the purchase price.

But I do not think the act of 1878 ought to be so construed, or that it will even bear such a construction. By its express terms it does not include any case except where there is a default on the part of the purchaser. The failure to pay the 20 per centum is included in the failure to comply with the terms and requirements of the law generally. It is not the mere non-payment of this per centum by a given day that is to have the effect to make void the application or the purchase, but the failure to do so when and as required by law, namely, within 90 days after the publication of the notice of filing the map. Any other construction of the section would not only be strained, but would impute to the legislature a purpose to impair the obligation of the contract of the state with the purchaser, which ought not to be done if it can be avoided.

Prior to the passage of the act of 1887, the act of 1878 was not regarded as affecting sales where there had been no default in the payment of the 20 per centum, or otherwise, on the part of the purchaser or his assigns.

In an opinion delivered by the board of land commissioners some years before the passage of the former act, entitled "In the matter of the application of H. C. Owen for a certificate of purchase of certain swamp lands," it was held that the act of 1878 does not apply to a case where the period prescribed by the act of 1870 for the payment of the 20 per centum has not expired; and such I understand has been the uniform construction heretofore given to the act by the board.

The construction given to a statute by the executive or administrative officers of the government charged with its execution is entitled to respectful consideration, and ought not to be lightly overruled. Endl. Interp. St. § 360; *U. S.* v. *Moore,* 95 U. S. 763; *Scanlan* v. *Childs,* 33 Wis. 666; *Westbrook* v. *Miller,* 56 Mich. 151, 22 N. W. Rep. 256.

In conclusion, the act of 1878 does not authorize the board to treat this land as reverted to the state, because the 20 per centum of the purchase price was not paid before it took effect, and would be unconstitutional and void if it did. The per centum was duly paid and accepted by the board when it was due.

Section 1 of the act of 1887 is void and of no effect in the case of contracts like this, where this per centum was not due and payable prior to January 17, 1879.

This being so, the defendants are acting without the authority of law, —without the authority of the state. They do not represent the state. The state is not a party to this suit either on the record or in substance or effect, and therefore the court has jurisdiction of the same as a suit between private persons who are citizens of different states.

The plaintiff is entitled to a perpetual injunction against the defendants, and for costs.