### FLANNERY v. MARINE PRODUCTION CO., Inc.
#### No. 6032.

Court of Civil Appeals of Texas. Texarkana.
April 7, 1943.

Rehearing Denied April 29, 1943.

H. P. Smead, and Wynne & Wynne, both of Longview, and Henry H. Harbour, of Du Quoin, Ill., for appellant.

W. Edward Lee, of Tyler, and John Porter, of Longview, for appellee.

WILLIAMS, Justice.

This is a suit by appellant, Lawrence S. Flannery, against appellee, Marine Production Company, Inc., defendant below, to recover ½ the income taxes assessed for the calendar year 1936 by the United States Government against Lawrence S. Flannery, and Lawrence S. Flannery transferee of Lawrence S. Flannery, Inc. Hereafter the Marine Production Company, Inc., will be referred to as Marine, Lawrence S. Flannery as Flannery, and the Lawrence S. Flannery, Inc., as Flannery Company.

In 1931 Johnnie V. (Mrs. W. W.) Bradley obtained a district court order removing her disabilities of coverture. Thereafter Mrs. Bradley and Flannery engaged as partners in the oil business, and later in 1931 incorporated as Marine. The assets of the partnership went into the corporation and Mrs. Bradley was issued ½ the stock directly or beneficially, and Flannery was issued the other ½ either directly or beneficially. Later Flannery's half of the stock in the Marine passed into the hands of Flannery Company. Flannery was the sole beneficial owner of all the Flannery Company stock. Discussions of a partial liquidation of Marine, by the terms of which one or the other of them would surrender ½ the stock in exchange for what might be agreed upon as ½ the assets thereof, resulted in an agreement in the latter part of 1935, by the terms of which Flannery Company would surrender ½ the stock of Marine in exchange for ½ the assets of Marine.

This agreement reduced to writing, executed and acknowledged by the contracting parties on January 27, 1936, and upon which this suit is grounded, reads:

"This Contract and Agreement, made and entered into on this the 27th day of January, 1936, by and between Lawrence S. Flannery, Inc., and Lawrence S. Flannery, hereinafter called first parties, and Marine Production Company, Inc., and Johnnie V. Bradley, joined herein by her husband, W. W. Bradley, hereinafter called second parties, witnesseth:

"Whereas, all of the stock of the Marine Production Company, Inc., is owned by Johnnie V. Bradley and Lawrence S. Flannery, Inc., with the exception of one qualifying share owned by H. W. Keathley, which is the property of Johnnie V. Bradley, and one qualifying share held by L. S. Flannery, which is the property of Lawrence S. Flannery, Inc.,; and,

"Whereas, the parties have agreed among themselves to a division and partition of the assets of said Marine Production Company, Inc.,

"Now, therefore, it is agreed between the parties as follows:

"That there be transferred by good and sufficient conveyance to Lawrence S. Flannery, Inc., the Cole lease * * *

"The said L. S. Flannery, Inc to be further conveyed the West half of the York lease * * *

"The Marine Production Company, Inc., shall retain and does accept the Richey lease * * * and does further retain the East ½ of the York lease * * *."

The agreement further provides for the division between the contracting parties of certain oil storage tanks, oil in storage, machinery, furniture, and the completion of certain wells on the lease, all of which are minutely detailed.

"It is further understood and agreed between the parties that the stock of the Marine Production Company, Inc., now owned by Lawrence S. Flannery, Inc., and the one share held by L. S. Flannery, as a qualifying share, shall be transferred to the Marine Production Company, Inc., as a transfer of property in kind and to become Treasury stock of the Marine Production Company, Inc.

"*It is further understood and agreed between the parties that the expense of completing this transfer, and all expenses incident thereto, shall be at the equal expense of both parties, that is, Marine Production Company, Inc. and Lawrence S. Flannery, Inc.,* and that all outstanding bills and accounts against the Marine Production Company, Inc., as shown by the books of account and record as of December 31st,

1935, shall be paid with the funds now on hand and which may be due as of said date, to the Marine Production Company, Inc., insofar as said funds will pay, and after that time, one-half shall be paid by each, Lawrence S. Flannery, Inc. and the Marine Production Company, Inc., this to include any income tax which may be due up to and including December 31, 1935, *or any income tax that might be assessed and agreed to by all parties hereto, incident to this exchange and transfer*. Provided, that should any funds remain in the Marine Production Company, Inc., after payment of bills, it shall be divided equally between Marine Production Company and Lawrence S. Flannery, Inc.

"It is further particularly understood and agreed that upon the execution of these instruments and the delivery of the things above agreed to be delivered, all accounts due between Marine Production Company, Inc., and L. S. Flannery individually and Lawrence S. Flannery, Inc., be and the same shall be settled and closed except insofar as hereinabove set out.

"It is further particularly understood and agreed between the parties that all of the things herein agreed to be delivered to the other, shall become the property of that particular one to whom it shall have been above given or set out, and this instrument shall have the effect of transferring and exchanging title of said property unto the person to whom it shall have been allotted or given." (Italics ours.)

At the time this agreement was executed, Flannery Company surrendered to Marine the stock above mentioned, and the Marine assigned to Flannery Company the assets contracted by above agreement and Flannery Company went into possession of the property so assigned and Marine remained in possession of its remaining assets. Since above transactions Mrs. Bradley has remained the sole beneficial owner of the stock of Marine. Flannery Company was dissolved in August, 1937, by Flannery, the owner of its stock, who took over all assets and assumed all obligations of the latter company.

Fred Humphrey, who was present in the capacity of tax consultant when the agreement was executed and who had been auditing the Marine's books annually for a number of years and had performed similar services for Flannery and Flannery Company, audited the Marine's books in the early part of 1936 as of December 31, 1935.

Pursuant to the agreement, he made a pro forma or extended balance sheet as of January 27, 1936. Marine and Flannery Company used the extended balance sheet as a basis of their final accounting between each other. Humphrey prepared the 1936 income tax return of Flannery Company which showed a loss for income tax purposes for 1936. The Internal Revenue Department upon examination of this income report, proposed an assessment for income, excess profits and surtaxes for the year 1936 in a sum of about $71,000, by reason of above transaction. Flannery, the successor to Flannery Company, employed counsel and tax consultants and contested such assessment. This contest, after various hearings, resulted in a consent decree in April 1941, by which no penalties were assessed but in which $21,539.68 was adjudged as normal income tax, $19,340.11 as excess profits tax, and $7,780.16 as surtax, a total of taxes adjudged against Flannery Company and Flannery as Transferee of Flannery Company in the sum of $48,659.95 for the calendar year 1936. The assessment of above taxes grew out of and resulted from the transaction above detailed, and except for same, the Flannery Company would have sustained a net loss for income tax purposes for 1936 in the sum of about $3,000. The facts above detailed are taken from the first four paragraphs of the court's findings of fact and are not assailed.

It is for ½ of above taxes plus ½ the fees paid by plaintiff to attorneys and income tax consultants in contesting the assessment that Flannery sought judgment against Marine. It is admitted that all other parts of the contract had been fully performed. Plaintiff was denied any recovery.

After quoting the clause in the agreement reading, "or any income tax that might be assessed and agreed to by all parties hereto, incident to this exchange and transfer," the trial court concluded that this clause "even when construed in connection with, as it must be, the entire instrument, did not constitute a then binding obligation" on the part of defendant to pay ½ the income taxes here sued for; "being dependent entirely upon whether or not the parties could in the future agree"; "no obligation on the part of Marine to do anything, the matter being left entirely to the will or caprice of the parties." Appellee cites in support of the judgment W. T. Rawleigh Co. v. Land, 115 Tex. 319, 279 S.W. 810, 811, and

authorities there collated, and asserts: "It was a mere statement that the payment of same would be shared equally provided the parties could and did at some future time agree to do so." We need not determine the applicability of the authority above cited to the phrase relied upon by appellee, or the construction of such phrase, for it does not stand alone and is not the whole of the agreement entered into.

■ "The primary [cardinal] rule in the construction of contracts is that the court must, if possible, ascertain and give effect to the mutual intention of the parties, so far as that may be done without contravention of legal principles, statutes, or public policy." 17 C.J.S., Contracts, § 295, pp. 689, 692; "to be gathered from a consideration of the entire instrument taken by its four corners," 10 T.J. (Contracts) Sec. 164. Under above rules when applied here we are of the opinion that the agreement considered as a whole expresses and discloses the mutual intent to share equally all the costs and expenses including any income tax that might be assessed under legal authority incident to the transfer, division and partition of the properties.

■■ In their dealings as partners before incorporation, as stockholders in the corporation, and at the time the contract was executed these litigants were interested and operated on a 50-50 basis. The contract expresses their intent to and they did partition the assets on such a basis. All liabilities and expenses incident to the consummation of the division except the item in controversy was shared by them on a 50-50 basis. The taxes here involved arose by reason of the transfer of ½ in value of the assets for ½ of the stock. Such taxes so resulting are embraced under the provision of the contract, reading, "It is further understood and agreed that the expenses of completing this transfer, and all expenses incident thereto shall be at the equal expense of both parties." The taxes involved grew out of and were an expense incident to "this transfer." We know of no rule of construction to authorize us to strike down the last quoted provision, one in harmony with the general purpose and object of the agreement and in accord with all their previous association, and to give effect solely to the clause "and agreed to by all parties hereto," the only phrase in discord and out of harmony with all other recitations and provisions in the agreement. "In the interpretation of an agreement, the surrounding circumstances at the time it was made should be considered for the purpose of ascertaining its meaning. * * *" 12 Am.Jur., Sec. 247, p. 784; 17 C.J.S., Contracts, § 321, p. 744. "Every intendment is to be made against the interpretation of a contract under which it would operate as a snare." 12 Am.Jur. (Contracts) Sec. 250.

■ Approximately two years after the execution of above agreement and while the contest of the assessment of the taxes here involved was pending before the Federal taxing agencies, litigants settled another controversy which grew out of the drilling of an oil well provided for in the original agreement. This latter settlement agreement signed by L. S. Flannery and the Marine Production Company per Mrs. Johnnie V. Bradley, dated December 21, 1937, contains this concluding clause: "It being particularly understood that this shall in no wise be considered a release or settlement of income taxes which are due or may become due by virtue of the exchange and transfer of property of January 27, 1936." Humphrey, the tax consultant present when the 1936 agreement was being prepared, stated, "there would be a tax on this distribution;" what it was he did not know, or "who it would fall upon." The scrivener who prepared the instrument testified that the phrase "and agreed to by the parties" was inserted at the suggestion of Mrs. Bradley. "She wanted to be consulted about, didn't want any snap judgment taken anyway it went." Above provision in the 1937 agreement and above testimony given with respect to the execution of the agreement are not of such probative force as to destroy the intent and purpose expressed in the 1936 agreement that they were to share equally "all expenses of completing this transfer, and all expenses incident thereto." 17 C.J.S., Contracts, § 324; 10 T. J., p. 277, Sec. 162.

The court found that if Flannery Company had declared and filed its 1936 returns on its capital stock value at ten times its earnings for 1936, there would have been no excess profit tax by reason of the partial liquidation and transfer involved in the agreement; and further, if Flannery Company had declared dividends pursuant to the revenue laws then in force, all surtaxes could have been avoided; and the

foregoing were such as to amount to negligence on plaintiff's part.

If it be assumed (without deciding) that the evidence was sufficient to support the finding of negligence, such alleged negligence did not affect the normal income tax assessment. If dividends had been declared, the record does not disclose the amount of taxes which would have been due on such dividends if received by plaintiff. If the capital stock value had been increased, the record does not disclose for what period of time such capital stock tax, and its amount would be assessed. If plaintiff was negligent, the last two items as deductions are to be considered on the element of amount of damages resulting from the alleged damages. The record is absent a finding as to the value of attorneys' and other professional fees. We pretermit a discussion of the sufficiency of the evidence as here presented to support the finding of negligence, and leave such issue an open question for determination from the evidence produced upon another trial. It is suggested that counsel for litigants upon another trial introduce the laws, rules, regulations and practices with respect to such income tax matters, to the end that a court not versed in such matters may be better enabled to reach some conclusion on an issue of negligence, and if so to what extent.

For the reason indicated, the judgment is reversed and the cause remanded.