**C. J. SCHELL, Appellant,**

v.

**TRAVIS MATERIALS COMPANY,
Appellee.**

**No. 11832.**

Court of Civil Appeals of Texas,
Austin.

June 9, 1971.

Ashton & Henderson, Verne D. J. Philips, Austin, for appellant.

Wroe Owens, Phil Mockford, Austin, for appellee.

O'QUINN, Justice.

C. J. Schell, the appellant, brought suit against Centex Materials, Inc., and Travis Materials Company, a corporation, alleging breach of a written contract and seeking damages alleged to flow from "such breach [which] was wilful, malicious and for the purpose of injuring plaintiff and for the purpose of driving plaintiff out of business." Centex Materials, Inc., is successor to Travis Materials Company and therefore is the sole appellee.

The final judgment upon which this appeal is predicated was entered by the trial court on October 23, 1970, in which were incorporated two prior interlocutory orders dated February 4, 1969, and May 19, 1969. The final judgment decreed: "(a) That Defendant's Motion for Summary Judgment as to any general issue of material fact relating to Plaintiff's Original Petition is Granted, and that Plaintiff take nothing in his suit against Defendant; and (b) That Defendant, have and recover of and from the Plaintiff the sum of $15,000.00, together with all costs herein incurred, and for all of which let execution issue."

Appeal is from that part only of the judgment granting summary judgment. The latter part of the judgment was entered upon approval by the court of an agreement between the parties as to an

amount due by Schell to Centex Materials on a counterclaim by the company.

Appellant brings five points of error, all directed at the action of the court in granting the summary judgment. Appellant contends that the contract was ambiguous, that it was prepared by appellee and should have been construed against appellee, that the court should have afforded appellant opportunity to show by parol evidence the terms of the contract when the writing itself was ambiguous, and that "the depositions, sworn pleadings, answers to interrogatories, and affidavits before the court" showed that appellant by amending his pleadings to allege a "contract partly written and partly oral" would render the position of appellee "insupportable under the substantive law."

Appellee's position in the trial court and on appeal is that " * * * no contractual relationship existed between the parties as a matter of law or else that whatever relationship existed between the parties was terminable at will and had been terminated."

The writing which is the basis of this lawsuit recited in the preamble that appellee "is engaged in the sand and gravel business * * * and desires to contract with * * * [Schell] to haul and deliver same, and * * * [Schell] is the owner of one or more motor vehicles suitable for the transportation of the above-mentioned substances, and desires to contract with * * * [appellee] for the hauling and delivery of same * * *"

The parties then agreed:

"Travis [appellee] * * * will from time to time, tender to Contractor [Schell] a load or loads of sand or gravel and like or associated substances (hereinafter called 'materials') for delivery by Contractor, which tender shall be in the form of a ticket specifying the place to which and the person or party to whom, such materials are to be delivered, and the rate or amount of compensation which Travis is willing to pay Contractor for such haul or delivery. Upon the tender of a load or loads by Travis to Contractor, Contractor shall be free to accept or reject the load or loads as he so desires, and this contract shall not, and shall not be construed to obligate or require Travis to tender to Contractor any specified amount of materials or number of loads for hauling during any given period, and does not obligate or require Contractor to accept any specified amount of materials or specified number of loads for hauling during any given period, and he may accept or reject any or all of such loads tendered to him at his election.

"In the event that Contractor elects to accept for hauling any load or loads tendered to him by Travis, then it is mutually agreed by and between the parties hereto that the hauling or delivery of such load or loads as shall be accepted from Travis by Contractor shall be performed under, and in accordance with, the following terms and provisions:"

The terms and provisions referred to were stated in six numbered paragraphs in which the parties agreed upon procedures for pick-up and delivery of materials, kinds of equipment to be used, the providing by Schell of insurance including workmen's compensation, public liability and property damage, and other details, pertaining to deductions for social security and unemployment compensation for Schell's employees, and payment of licenses and taxes by Schell.

Paragraph number 6 provided that "each ticket covering any load or loads of materials tendered by Travis to Contractor shall have printed or stamped upon the reverse side" reference to the writing under which the tenders and acceptances were made and " * * * the acceptance by Contractor * * * of any such ticket tendered to him will constitute conclusive evidence of the agreement by Contractor that any load or loads hauled or delivered by Contractor covered by such ticket shall

be performed under, in accordance, with an pursuant to the terms, conditions and provisions and this agreement."

The parties further provided in paragraph 6 that: "Either party, Travis or Contractor will have the right to terminate this contract giving 30 days written notice."

Although the parties designated the writing an "agreement" and declared that they desired "to contract" and that they did "mutually agree and covenant," the paper they executed failed in its essential elements to become a contract. If there was any semblance of a contract, it was only an agreement to make a contract in the future upon each separate occasion when and if the materials company should at its option tender a ticket and appellant at his option should agree to accept such ticket.

The parties expressly declared that "this contract shall not, and shall not be construed to obligate or require Travis to tender" any specified amount of materials or loads and would "not obligate or require Contractor to accept any specified amount of materials" or loads for hauling, and appellant could "accept or reject any or all of such loads tendered to him at his election." It was also left to the materials company, on such occasions as it might elect to tender materials for hauling, to specify "the rate or amount of compensation" it was "willing to pay Contractor for such haul or delivery." Only if the appellant elected "to accept for hauling any load or loads tendered" would the procedures spelled out in the writing become effective.

The writing simply provided that if in the future the materials company desired on occasions to tender a load or loads of materials for hauling and did make a tender by its ticket, the appellant could then determine whether he desired to haul the load or loads. Neither party had an obligation to the other if the materials company never tendered a load and if the contractor never accepted a load tendered. Thus no right was created and no obliga-

tion was declared. "The parties are left exactly where they were before. Neither is required to move except at his own will. Hence, there is no contract here." Raleigh Co. v. Land, 115 Tex. 319, 279 S.W. 810 (Com.App.1926).

In view of our holding that as a matter of law no contract was entered into by appellant and appellee, we find it unnecessary to discuss the several points of error. Appellant's points of error are overruled, and the judgment of the trial court will be affirmed.

The judgment of the trial court, that plaintiff below take nothing and that the motion of defendant below for summary judgment be granted, is in all things affirmed.

Affirmed.